Submitted April 21, affirmed December 30, 2015, petition for review denied
July 14, 2016 (360 Or 26)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTONIO SHEAN TAYLOR,
*Defendant-Appellant.*

Washington County Circuit Court
C130508CR; A154655

365 P3d 1149

Peter Gartlan, Chief Defender, and Robin A. Jones, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

A jury found defendant guilty of committing two counts of felony assault in the fourth degree, ORS 163.160(3), and the trial court merged the guilty verdicts into a single conviction. On appeal, defendant contends that the trial court erred when it precluded him from impeaching the victim with evidence that she had previously made a false accusation of abuse against him. Relying on this court's decision in *State v. LeClair*, 83 Or App 121, 130-31, 730 P2d 609 (1986), *rev den*, 303 Or 74 (1987), defendant argues that he was entitled to impeach the victim by cross-examining her about that prior accusation. We conclude that the trial court did not err when it precluded defendant from impeaching the victim with evidence of her earlier accusation. Accordingly, we affirm.

The facts that are pertinent to the issues on appeal are not disputed. The victim, defendant's wife, accused defendant of assaulting her. The victim testified at trial, and defendant sought to impeach her with evidence that she had previously made a false allegation of domestic abuse against him. Specifically, defendant sought to cross-examine the victim based on information in a police officer's handwritten "Application for 72-hour Detention for Evaluation and Treatment." That document indicated that, while the parties resided in California, the victim had accused defendant of assaulting her and pushing her into a window. The application also indicated that officers responding to the victim's accusation had seen the broken window but had observed no cuts, marks, scratches, or bruises on the victim. The application included a statement that investigation had revealed that "there was no fight." Following the California incident, no arrest was made and the victim was taken to a hospital for a mental health evaluation and treatment.

Defendant argued to the trial court that he was entitled to impeach the victim's testimony with evidence of the accusation she made against him in California, because he had demonstrated that the accusation was false. As noted, defendant relied on *LeClair*, in which we held that "the Confrontation Clause of Article I, section 11, requires that the court permit a defendant to cross-examine the

complaining witness in front of the jury considering other accusations she has made" in three circumstances:

"1) [when the complaining witness] has recanted [the accusations]; 2) the defendant demonstrates to the court that those accusations were false; or 3) there is some evidence that the victim has made prior accusations that were false, unless the probative value of the evidence which the defendant seeks to elicit on the cross-examination (including the probability that false accusations were in fact made) is substantially outweighed by the risk of prejudice, confusion, embarrassment or delay."

83 Or App at 130. Defendant did not contend that the victim had recanted the accusations she had made in California, but he argued that the application was "evidence that the * * * prior accusations were false."

The trial court rejected defendant's *LeClair* argument and provided a detailed explanation of its ruling. The court acknowledged that the California officers' reported observations and conclusions regarding what had happened did provide some evidence that the victim's accusations had been false. However, the court suggested that it was not persuaded of the falsity of those accusations:

"After the police arrived, rather than arresting anybody for domestic violence or any other type of criminal activity, victim was taken to the hospital on a police officer hold, which is equivalent to the police officer hold that we have here in Oregon. So, the—the fact that victim was taken to the hospital on a police officer hold does not, to the court's mind, demonstrate any evidence or any inference other than victim was suffering from mental health problems that impaired her own safety or the safety of others. It has nothing in it either inferentially or otherwise to bear on her credibility."

Having ruled, at least implicitly, that defendant had not demonstrated to its satisfaction that the accusations were false, the court went on to weigh the probative value of evidence of the California incident against the downsides of allowing defendant to impeach the victim on that point. In the end, the court ruled that exploration of the California matter "would not be helpful to the jury" because it would "ask[] the jury to decide the truth or falsity of the occurrence

of the facts in this previous event" based on no evidence other than the written detention application and questioning of the victim. Accordingly, the court sustained the state's objection to use of the application for impeachment, and it did not allow defendant to question the victim about the California incident. Defendant ultimately was convicted on the assault charges.

On appeal, defendant challenges the trial court's ruling on the *LeClair* issue. He first argues that he "demonstrated" that the victim's prior accusations were false and he was, therefore, absolutely entitled to impeach her on that topic. Second, defendant contends that, even if he proffered only "some evidence" that the victim had made prior false accusations, "the court abused its discretion by concluding that the probative value of the evidence was outweighed by the risk of confusion and delay."

We begin by considering whether the trial court erred when it determined that defendant had not demonstrated the falsity of the accusations that the victim made during the California incident. The question before the trial court was not whether, in some abstract sense, the accusations were "demonstrably false." *State v. Arellano*, 149 Or App 86, 91, 941 P2d 1089 (1997), *rev dismissed*, 327 Or 555 (1998). Rather, the question for the trial court was whether defendant had demonstrated *to the court's satisfaction* that the victim's prior accusations were false, keeping in mind that to demonstrate falsity means to establish it "clearly, certainly, or unmistakably." *Id.* (quoting *Webster's Third New Int'l Dictionary* 600 (unabridged ed 1993)). If the court was not persuaded that the accusations were false, its finding on that point is binding on appeal if the record supports it. *Id.*; *see State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) ("we are bound by a trial court's 'finding' that a party's evidence is not sufficiently persuasive" unless the evidence would allow "the trial court as finder of fact [to] decide a particular factual question in only" the other way).

Defendant suggests that the statements included in the California officer's application to detain the victim for a mental health evaluation establish conclusively that the victim's previous accusations against defendant were false.

We disagree. Although the application states that the victim suffered no physical injury and the officer believed "no fight had occurred," those statements do not necessarily establish that, in fact, defendant did not assault the victim. The application does not preclude, for example, the possibility that defendant may have attacked the victim but not left injuries that were immediately visible. Moreover, the application includes some evidence supporting the victim's report that defendant had pushed her into a window; it notes that a window was, in fact, broken. Thus, the application did not *compel* the trial court to find that the victim had made false accusations against defendant in California. Put differently, the record permits the trial court's finding that it was not persuaded that the victim had made prior false accusations against defendant. *See Johnson,* 335 Or at 523 (we "consider ourselves equally bound by a trial court's acceptance or rejection of evidence"); *Arellano,* 149 Or App at 91 (rejecting the defendant's argument that he conclusively demonstrated the falsity of a prior accusation that his victim had made against a classmate by offering evidence that included an investigating officer's report that the victim's prior accusation had been "unfounded"). Accordingly, the trial court did not err when it found itself not persuaded that defendant had demonstrated the falsity of the victim's prior accusations.[1]

We turn to defendant's second argument, which implicates the last type of circumstance in which a defendant may be entitled to impeach a victim with evidence that the victim has made prior false accusations: when "there is some evidence that the victim has made prior accusations that were false, *unless* the probative value of the evidence which the defendant seeks to elicit on the cross-examination

---

[1] Defendant also asserts on appeal that the *LeClair* analysis "may not always be particularly helpful" in cases involving prior accusations of *nonsexual* assault, because the falsity of those accusations may be more easily proved than accusations of sexual abuse. Defendant suggests, therefore, that a trial court more readily can—and should—determine that the evidence demonstrates that prior accusations of nonsexual assault are false. To the extent that defendant is arguing that the *LeClair* test should be changed when it is applied to cases that involve prior accusations of crimes other than sexual abuse, that argument is not preserved for our review. Below, defendant invoked *LeClair* and argued that the trial court should apply it straightforwardly to this case; he did not suggest that the analysis should shift in cases that involve prior accusations of something other than sex crimes.

(including the probability that false accusations were in fact made) is substantially outweighed by the risk of prejudice, confusion, embarrassment or delay." *LeClair*, 83 Or App at 130 (emphasis added). We review the trial court's ruling on that point, *viz.*, on the balancing "of the probative value and potential prejudice of allowing * * * inquiry into the matter," for abuse of discretion. *Arellano*, 149 Or App at 89.

Here, the trial court explained on the record how it viewed the balance of the pertinent factors. First, the court reasoned that "what [presentation of the evidence] does is asks the jury to decide the truth or falsity of the occurrence of the facts in this previous event, rather than the one that they're supposed to be deciding." Second, the court questioned the probative value of the evidence, stating:

> "because what you have is the report, we don't even have the officers or any other of the witnesses here from the event, other than victim and defendant, to amplify or to discuss the event. So, even if the evidence were introduced or victim was asked about it, we don't have any way to resolve that event or to give any meaningful way for the jury to evaluate the event without having witnesses to either corroborate or impeach victim's statements."

In the end, the court expressed its view that asking the victim about the California incident "would not be helpful to the jury" and it precluded defendant from questioning her about that incident or introducing other evidence about it.

That ruling was not an abuse of discretion. A trial court has authority to preclude this type of cross-examination on allegedly false prior accusations when it reasonably determines that exploration of the previous incident would essentially require an unhelpful trial within a trial. *See Arellano*, 149 Or App at 91 (recognizing that a delay in proceedings to explore a collateral matter can create a risk of prejudice); *LeClair*, 83 Or App at 131 (noting that the trial court properly considered that any inquiry into two allegedly false accusations would require "a mini-trial to determine if each incident had actually occurred"). And in this case, the court reasonably determined that holding that "trial within a trial" would be impractical because none of the California police officers were present, defendant could

not be compelled to testify about the incident, and nobody else could either corroborate or contradict any statements the victim might make about it. In sum, the trial court reasonably weighed the probative value of evidence about the earlier incident against the risk of delay and jury confusion that its use at trial would entail. The court did not abuse its discretion in deciding that, on balance, the evidence should be excluded.

Affirmed.